UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL VALANDRA, JR.; DONALD AQUALLO, JR.;<br><br>Defendants. | 3:24-CR-30027-ECS<br><br><br>OPINION AND ORDER GRANTING RESTITUTION AND FOR AMENDED JUDGMENT |

This Opinion and Order resolves the remaining issues on restitution for the arson of an unoccupied building.

I. **Facts**

On the night of January 5, 2024, Defendants Michael Valandra, Jr. ("Valandra") and Donald Aquallo, Jr. ("Aquallo") unlawfully entered an unoccupied residence ("the building") in St. Francis, South Dakota, that belonged to Charlee Archambault ("Archambault"). Docs. 47, 91. Valandra was angry with Archambault for having kicked him out of her primary residence[1] on the lot a few days earlier, and wanted to retaliate against Archambault. Docs. 47, 91. Valandra set fire to the building with the intent to burn it down as Aquallo kept watch "as an unassigned lookout." Doc 47; Doc. 118 ¶ 11. Valandra and Aquallo subsequently fled the scene as the building burned. Docs. 47, 91.

---

[1] Archambault's primary residence is about 12 feet from the destroyed building. Doc. 85 at 5.

1

A subsequent investigation of the fire was conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Doc. 69 ¶ 17; Doc. 118 ¶ 12. The examination concluded that a fire was set inside the building. Doc. 69 ¶ 17; Doc. 118 ¶ 12. The building and the contents in it were destroyed. Doc. 69 ¶ 17; Doc. 118 ¶ 12.

Valandra ultimately pleaded guilty to arson.[2] Docs. 51, 53, 56. Aquallo pleaded guilty to third degree burglary.[3] Docs. 1, 101, 107.

At each Defendant's sentencing hearing, the Government advised it was seeking restitution on behalf of Archambault in the amount of $370,980.00 due to losses she sustained from the fire. At both hearings, the Government called, and Defendants' counsel cross-examined, Archambault.[4] Archambault detailed that she was the owner of the destroyed building. She maintained that the entire property was gifted to her by Bob Bordeaux, who she claims put together the destroyed building.[5] Archambault's testimony and the Government's exhibits introduced at the hearings are incorporated by reference into this Opinion and Order. At the conclusion of each Defendant's sentencing hearing, this Court left open the question of restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. Because Aquallo pleaded guilty four months later than Valandra, the Court advised the parties that its restitution ruling would be filed after the MVRA's 90-day deadline. No party objected to this Court taking additional time to determine the restitution issues.[6]

---

[2] Valandra was sentenced to 37 months of imprisonment. Doc. 84.
[3] Aquallo was sentenced to 18 months of imprisonment. Doc. 120.
[4] This Court found Archambault's testimony to be credible.
[5] The building consisted of two "Sioux 400's," which were homes that each contained two bedrooms and one bathroom.
[6] "The fact that a sentencing court misses the [MVRA's] 90-day deadline . . . does not deprive the court of the power to order restitution." Dolan v. United States, 560 U.S. 605, 611 (2010).

Along with Archambault's testimony and the exhibits the Government introduced at the sentencing hearings, the Government submitted a document titled "Charlee Ida Archambault Preliminary Home Site Map" from the BIA. Doc. 121. The Government also filed a document on house values from the Sicangu Wicoti Awayankapi Corporation ("SWA")—the entity responsible for RST housing. Doc. 104. The document contained estimated values for similar residences in the St. Francis area. Id.

## II. Discussion

Archambault asks this Court for a $370,980.00 restitution award. Doc. 75. She breaks this amount down as follows:

- Unoccupied structure: $247,500.00
- 3 broken windows in primary residence: $900.00
- 3 large trash bins for cleanup: $1,200.00
- 3 workers for 3 days: $480.00
- Washer and Dryer: $1,500.00
- Mattress Set: $1,500.00
- Tipi: $3,000.00
- White tent for ceremony: $1,000.00
- 3 sweat lodge tarps: $450.00
- Cedar chest/coffin: $20,000.00
- Dresser from 1800's: $80,000.00
- 8 Antique cooking pans: $1,200.00
- 3 vintage Pendleton coats: $1,500.00
- 10 vintage Pendleton suits: $3,000.00
- 2 sets of moccasins and leggings: $4,000.00
- 2 buffalo skulls: $2,000.00
- 5 Star quilts: $1,750.00

Id. During the sentencing hearings, Archambault valued the destroyed property. For brevity, her testimony on the values she prescribed to these items is incorporated into this Opinion and Order. Defendants do not contest that they owe restitution to Archambault but believe a $370,980.00 restitution award grants Archambault an improper windfall for various reasons.

### A. Restitution Standard under the MVRA

"The government bears the burden of proving the amount of restitution based on a preponderance of the evidence." United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011) (citations omitted); 18 U.S.C. § 3664(e). "The purpose of the MVRA is 'to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.'" Frazier, 651 F.3d at 904 (8th Cir. 2011) (quoting United States v. Statman, 604 F.3d 529, 538 (8th Cir. 2010)). For this reason, the MVRA requires a sentencing court to "order . . . the defendant [to] make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). A "victim" is "a person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). "Once the court has identified the victims, the next step is to determine 'the full amount of each victim's losses.'" Frazier, 651 F.3d at 903 (quoting 18 U.S.C. § 3664(f)(1)(A)). The government can satisfy its burden on the restitution issue by introducing a sworn statement or eliciting testimony "from the victim outlining the losses sustained as a result of the crime." United States v. Clausen, 949 F.3d 1076, 1081 (8th Cir. 2020) (quoting United States v. Adetiloye, 716 F.3d 1030, 1039 (8th Cir. 2013)).

### B. The Building

Defendants first attack Archambault's inclusion of the building in her restitution request. They believe that she has failed to establish that she is the rightful owner of the real property because she did not introduce a deed or equivalent ownership document into evidence. For this

reason, Defendants maintain that Archambault deserves no amount with respect to the building. The Court disagrees.

No party disputes that Archambault is "a person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). Thus, she is a victim and entitled to an amount equivalent to the loss caused by Defendants' conduct. Defendants acknowledge they burned down Archambault's building. See Docs. 47, 91. Their signed factual basis statements admit that the building "belonged" to Archambault. Docs. 47, 91. Valandra states he set fire to the building in retaliation for Archambault kicking him out of her primary residence a few days earlier. Docs. 47, 91. Archambault testified that she was the rightful owner of the property.[7] The Government also submitted a map from the BIA showing that Archambault was the owner of the property.[8] Doc. 121. Thus, Archambault may recover for the loss of her building.

---

[7] "Sufficient information for the entry of a restitution order may be produced by witness testimony at a hearing or sworn victim statements outlining the losses which resulted from the crime." United States v. Adejumo, 777 F.3d 1017, 1020 (8th Cir. 2015) (citing Adetiloye, 716 F.3d at 1039); see also United States v. Sanchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013) ("[T]he district court's order relied on the $24,000 loss amount quoted in the PSI Report. That information came straight from the mouth of the victim [. . .] we cannot fault the district court for its acceptance of the loss-amount figure."); United States v. Rivera-Solis, 733 F. Supp. 3d 46, 56 (D.P.R. 2024) ("Victim Impact Statements and presentence reports are reliable sources, often serving as the factual basis for restitution orders." (citation omitted)). Accordingly, this Court can and does consider Defendants' signed factual basis statements and Archambault's testimony as it determines the restitution issue.

[8] At the top of the "map," it states that the information is "for illustrative and reference purposes only and should not be used a, and is not intended for, legal . . . purposes." Doc. 121. It also states that "[n]o warranty is made by the [BIA] for the accuracy of the map. Ownership and jurisdictional status of land must be verified with plat books, patents, and deed at the appropriate federal and state offices." Id. Although the document contains these representations, this evidence aligns with Defendants' signed factual basis statements, Archambault's long term occupation of the property, and her testimony that she was the owner of the property.

### C. Restitution Amount for the Building

Next, Defendants challenge the amount of restitution regarding Archambault's building. "The amount of restitution 'must be based on the amount of loss *actually* caused by the defendant's offense.'" United States v. Yellow, 221 F. Supp. 3d 1142, 1145 (D.S.D. 2016) (quoting United States v. Petruk, 484 F.3d 1035, 1036 (8th Cir. 2007)); see also Frazier, 651 F.3d at 904 (Courts "cannot award the victim 'a windfall,' i.e., more in restitution than he actually lost." (quoting United States v. Boccagna, 450 F.3d 107, 117 (2d Cir. 2006)). When dealing with property damage, "the victim's actual loss equals 'the greater of . . . the value of the property on the date of the damage, loss, or destruction; or . . . the value of the property on the date of sentencing.'" Id. at 904 (alterations in original) (quoting 18 U.S.C. § 3663A(b)(1)(B)(i)). "The Eighth Circuit has recognized the variety of methods available to a court under the MVRA in valuing property—fair market value, replacement cost, and foreclosure prices—but has suggested that fair market value is the most apt means to value property." Yellow, 221 F. Supp. 3d at 1146 (citing Frazier, 651 F.3d at 904). "Ultimately, it is for the district court to select the appropriate valuation method based on applicable circumstances." Id. (citing Frazier, 651 F.3d at 904). A district court's calculation of restitution is not held to standards of mathematical or scientific precision. United States v. Gushlak, 728 F.3d 184, 195 (2d Cir. 2013); United States v. Sanchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013). For this reason, courts can "make reasonable estimates supported by the record." United States v. King, 93 F.4th 845, 851 (5th Cir. 2024); Gushlak, 728 F.3d at 195–96. The Court will first determine the amount of restitution on the building and will then turn to the personal items.

Archambault's unoccupied building had four bedrooms, two bathrooms, and was located in St. Francis, SD. Archambault used this building for storage as the building did not have

electricity or heat. Archambault requests $247,500 in restitution for this building based on an identically priced Zillow listing for a house in Valentine, Nebraska, which is around forty miles from St. Francis. Defendants argue that this listing cannot be properly considered by the Court as it is not similar to Archambault's building and is not located in or near St. Francis. The Court agrees with Defendants.

Archambault's unoccupied building is not similar enough to the Zillow listing she provided the Court. Furthermore, a listing price is not the price the property sold for, so the Zillow listing's probative value as to the fair market value of Archambault's building is minimal at best. The dearth of similar buildings sold in the St. Francis area leads the Court to believe that there is no "broad and active market" for this unoccupied building. See Frazier, 651 F.3d at 904. Thus, the Court concludes that the traditional fair market value sales comparison approach will not be the best way to value Archambault's loss. See Yellow, 221 F. Supp. 3d at 1146.

The Government introduced documentation showing an insurer's estimated replacement costs of two residences that burned down—one from White Horse, SD, and one from St. Francis, SD. Doc. 104. The Government only provided a valuation report on the St. Francis residence ("comparable property").[9] Thus, this Court will only consider the comparable property and the insurer's estimated replacement cost of that home. Id. The comparable property had 4 bedrooms and 1.5 bathrooms and is generally similar to Archambault's building. Id. The insurer's conclusion was that the estimated replacement cost for the property was $162,711.68. Id. The insurer assigned it an actual cash value of $144,840.82. Id.

---

[9] As for the White Horse house, the Government only provided the amount of bedrooms the residence had and the insurer's estimate to replace it.

7

The Court believes the proper starting point is the insurer's calculated "actual cash value" instead of the comparable property's "estimated replacement cost." See United States v. Shugart, 176 F.3d 1373, 1375 (11th Cir. 1999) (stating that "actual cash value" and "fair market value" are synonymous terms and the general measure to determine the amount of restitution). The insurer stated that the comparable property's actual cash value equaled its "replacement cost less depreciation." Doc. 104. Accordingly, if the Court awarded Archambault the estimated replacement cost, it would be granting her an inappropriate windfall since her building was not brand new and had wear and tear on it. See Frazier, 651 F.3d at 904. The comparable property was built in 2018. Doc. 104. Archambault's building, on the other hand, was acquired by her in 2014 when she was gifted the entire property by Bob Bordeaux.[10] Because Archambault's building is older than the comparable property,[11] the Court will initially give Archambault's building an adjusted actual cash value of $130,000.00. The Court now addresses the other differences between Archambault's building and the comparable property.

For starters, Archambault's building—unlike the comparable property—did not have a basement, electricity, heating, or cooling. Given these differences, the Court must reduce the insurer's estimated replacement cost by eliminating the values it gave to the comparable property's foundation, electrical, heating, cooling, and appliances.[12] Doc. 104. The comparable property also had a treated deck. Id. Accordingly, a further reduction is warranted because Archambault's building did not have a deck. After making these reductions, the Court finds that

---

[10] The record does not state exactly how old Archambault's building was but it was likely built before 2014.

[11] Archambault's residence also did not have heating, cooling, or electrical and thus likely had depreciated more than the comparable property due to its older age and exposure to the elements.

[12] Because Archambault makes a separate claim for her appliances, the Court will consider this issue below.

Archambault's building has an adjusted actual cash value of $83,000.00 and orders restitution in that amount to compensate Archambault for the loss of her building.

The Court now turns to Archambault's other claims for restitution.

### D. Remaining Restitution Claims

After reviewing the other property Archambault lost, the Court believes the vast amount of it was reasonably and properly valued by Archambault. See United States v. Adejumo, 777 F.3d 1017, 1020 (8th Cir. 2015); Adetiloye, 716 F.3d at 1039; Sanchez-Maldonado, 737 F.3d at 828. There are four claims that Archambault makes, however, that have issues: the cleanup costs (including the three trash bins and three workers for three days of work), the mattress set, the 1800's dresser, and the cedar chest. The Court will briefly address these topics in turn.

First, Archambault is not entitled to restitution for the cleanup. Archambault's testimony nor anything in the record shows why three large trash bins are necessary for cleanup. The same can be said about her estimate that it would take three men three days to clean the property up.

Second, Archambault is not entitled to restitution for the mattress as she testified that it belonged to her son. As it relates to the mattress, the victim was Archambault's son—not her. Accordingly, Archambault sustained no "loss."

Third, Archambault is not entitled to the full $80,000.00 she requests for the 1800's dresser. She testified that she paid $2,000.00 for it. The Court cannot award her for any of her clothing within the dresser because she did not comprehensively testify about specific clothes she lost from within the dresser. This Court thus awards Archambault $2,000.00 for the dresser.

Lastly, Archambault cannot recover for the cedar chest.[13] She asks this Court to award her $20,000.00 for it because her uncle made an artistic engraving on it. Archambault, testified

---

[13] Archambault planned to use this chest as her coffin.

9

that she came to this valuation after thinking about the art work her uncle did, the unique way that he designed the inside of the chest, and the fact that he is now deceased. Although the Court is sympathetic to Archambault's special attachment to the chest, the Court finds that $20,000.00 is not a reasonable calculation of Archambault's actual loss for this item especially given this Court's $2,000.00 valuation of the dresser. There is no other evidence in the record relevant to the chest's value. This Court is thus unable "to make [a] reasonable estimate[] supported by the record." King, 93 F.4th at 851; Gushlak, 728 F.3d at 195–96. As a result, the Government failed to meet its burden as to the amount of restitution owed to Archambault for the loss of her chest.

As for the remaining property Archambault claims restitution for, the Court finds sufficient evidence exists for Archambault's requested restitution amounts. Accordingly, after adjusting Archambault's building value to $83,000.00, her dresser value to $2,000.00, and eliminating all value assigned to cleanup, the mattress set, and her cedar chest, the Court arrives at a total restitution amount of $105,300.00.

### E. Joint and Several Liability

The last issue before the Court is whether to order joint and several liability for the restitution obligation. Aquallo asks the Court to apportion fault by percentage. He maintains that he should not be responsible for more than 5% of the restitution amount. The Government and Valandra, however, ask the Court to order joint and several liability. The Court, in its discretion, believes joint and several liability is appropriate in this case.

"When multiple defendants are involved in the loss, the district court has discretion to order restitution for the full amount of loss, to be shared jointly and severally by defendants." United States v. Rodriguez, 915 F.3d 532, 535 (8th Cir. 2019) (citing 18 U.S.C. § 3664(h)). "Under § 3664(h), 'co-defendants may be proportionally or jointly and severally liable for

10

restitution when they are all culpable.'" United States v. Moten, 551 F.3d 763, 768 (8th Cir. 2008) (quoting United States v. Klein, 476 F.3d 111, 114 (2d Cir. 2007)). Although Aquallo pleaded guilty to third degree burglary, while Valandra pleaded guilty to arson, Aquallo's problem is that he admitted in his factual basis statement that he unlawfully entered and remained in Archambault's building "with the intent to commit the crime of arson therein, or did aid and abet in the commission of the offense." Doc. 91. For this reason, joint and several liability for the burning of Archambault's building is appropriate.

### III. Order

For the above reasons, and the record as it now exists before this Court, it is hereby

ORDERED that Defendants, jointly and severally, pay restitution to Archambault in the amount of $105,300.00  It is further

ORDERED that payment of the total restitution and other criminal monetary penalties shall be due in regular quarterly installments of 50 percent of the deposits in Defendants' inmate trust accounts while Defendants are in custody or 10 percent of Defendants' inmate trust accounts while serving custody at a residential reentry center. Any portion of the monetary obligations not paid in full prior to Defendants' release from custody shall be due in monthly installments of $250.00, such payments to begin 60 days following Defendants' release. It is finally

ORDERED that the Probation and Pretrial Services Office prepare amended judgments for each Defendant consistent with this Opinion and Order.

DATED this 10th day of June, 2025.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE